CHARLES H. OLDEN

*v.*

URIAH SASSMAN.

[Filed June 3d, 1904.]

1. A lessee in a lease of a farm for one year, with the privilege of renewal for five years more, filed a petition in bankruptcy within a month after .the execution of the lease. There was no representation of the lessee's responsibility, and he equipped the farm with the cattle and implements called for in the lease.—*Held,* insufficient to warrant equity in canceling the renewal clause on the ground of the lessee's fraud.

2. The bankruptcy of the lessee under a lease demising the premises for a fixed term, with the privilege of renewal occurring during the fixed term, did not dissolve the agreement so as to authorize equity to cancel the renewal clause.

3. The fact that a lessor executing a lease for a fixed term, with the privilege .of renewal for another fixed term, only held the premises for life, did not affect the rights of the parties to the lease.

On bill, answer, replication and proofs.

*Mr. Fergus A. Dennis* and *Mr. John T. Bird,* for the complainant.

*Mr. James J. Cahill,* for the defendant.

REED, V. C.

This bill is filed to have a lease declared void at the end of a term of one year, and to have the following words in the agreement, namely, "That the privilege of the renewal of this lease for a further term of five years on the same terms and conditions," also declared to be a nullity.

The grounds upon which this relief is asked by the landlord is that the tenant, during the present year, has violated his agreement in failing to do certain things required of him in the lease,

namely, to spray the apple trees, to plant forty-five acres of corn, to divide the money received by him from the sale of milk and for the crops sold. Also that he has failed to plant and cultivate the corn and potatoes in a husband-like manner.

In respect to his conduct in planting the corn and cultivating it, and the potatoes, it is not clear that he fraudulently neglected to do what he could do under the circumstances.

In respect to the division of the money received from the sale of the crops he says, and I think truly, that he was advised by his counsel that he was under no obligation to do so until they were entirely sold. The failure to divide the money received from the milk sold seems to have been entirely inexcusable.

In addition to the cases already mentioned it is proved that after this agreement was made, on February 28th, 1903, the defendant filed a petition in bankruptcy in the United States district court for the eastern district of Pennsylvania, and was thereon adjudged a bankrupt. This petition was filed on March 17th, 1903, and he received his discharge on September 28th, 1903.

The question is presented whether any ground of equity jurisdiction to cancel the agreement is shown.

The prayer of the bill is to have excised from the agreement the clause respecting the privilege of renewal and to declare that the tenant's interest in the premises cease at the end of the first year; or, in other words, that he had no legal or equitable interest in the same by reason of the clause of renewal.

There is no doubt that a court of equity will refuse to grant relief to a tenant and refuse to decree specific performance of an agreement to renew whenever the conduct of a tenant as lessee, while such, has been inequitable; thus, where a tenant has been guilty of waste, or has broken his covenants not to assign his lease, and the landlord, under the clause for re-entry, has brought an action for ejectment, it was held that a court of equity would not enjoin the action. *Hill* v. *Barclay, 18 Ves. 56.* So the court will not decree a specific performance of an agreement to renew a lease where the tenant has violated his covenant that the rented premises shall be used as a private

dwelling. *Gannett* v. *Albree, 103 Mass. 372.* So the text-books say that insolvency of the tenant is a ground for refusing specific performance of an agreement to renew a lease. *Tayl. Land. & T.* § *337.* The cases cited in support of the latter statement, however, do not support the unqualified language of the text. Lord Eldon, in *Buckland* v. *Hall, 8 Ves. 92,* said that insolvency was an objection of weight, and upon that and other circumstances an injunction against an action in ejectment brought by the landlord was refused.

There is no doubt, however, that where the tenant has been guilty of inequitable conduct, or has become irresponsible, and is unable to assure the execution of the terms of the lease, a court will refuse him any affirmative relief. *12 Am & Eng. Encycl. L. (1st ed.) 1011.*

The question here is not whether the court will grant affirmative relief to the tenant but whether the court will make a decree in favor of the landlord against the tenant. The decree is asked for mainly upon the ground that by his conduct, while a tenant, the latter has forfeited his right to a renewal of the lease.

Courts of equity will sometimes relieve against a forfeiture, but in the language of Mr. Pomeroy

"it is a well settled and familiar doctrine that a court of equity will not interfere on behalf of the party entitled thereto and enforce a forfeiture, but will leave him to his legal remedies, if any, even though the case might be one in which no equitable relief would be given to the defaulting party against the forfeiture." *1 Pom. Eq. Jur.* § *459.*

Indeed, it is to be observed that there is not even a forfeiture provided for in the agreement under consideration, for the lessor has not included in it a clause for re-entry in case of breach of covenants or any condition upon which the right of renewal shall be lost by the conduct of the tenant.

If the clause of renewal is to be canceled, upon what ground can it be done? There was no illegality or mistake in the execution of the agreement. The right to cancellation of the clause for renewal must therefore rest upon some fraudulent

conduct of the defendant by which the execution of the agreement was induced. The only ground which can be alleged is that the defendant was insolvent at the time the agreement was entered into, and that he fraudulently concealed that fact from the complainant. Now, the only testimony which can be pressed into service to show his insolvency and his concealment of that condition are the two facts that the agreement was made on February 28th and that the petition in bankruptcy was filed on March 17th following.

There was, so far as appears, no representation of the tenant's responsibility, and it appears that he actually equipped the farm with the cattle and farming implements called for in his agreement.

I am unable to find, therefore, any sufficient proof that the tenant caused Mr. Olden to enter into this agreement by a false representation or concealment of a subsisting material fact.

It is also insisted that the prayer of the bill should be granted for the reason that upon the occurrence of the bankruptcy of the defendant the agreement became dissolved.

Now, the right of a tenant under the lease, for the lease seems to have been a pure demise, undoubtedly passed to the trustee in bankruptcy. But I am unable to see how, even if the trustee was a party to this suit, that fact could enlarge the jurisdiction of this court to cancel the agreement. Certainly, an expressed assignment of the lessee's interest to a third party would not have this result.

Nor do I perceive that the fact that Mr. Olden held the farm by a life tenure only adds anything to the strength of complainant's case. The clause for renewal might result in inconvenience to the representatives of the lessor should he die during the term. But I do not perceive how that fact alone can affect the rights of the parties under the clause in the executed agreement.

I am constrained to the conclusion that the bill should be dismissed.